**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AKRON GENERAL MEDICAL CENTER,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 15-2137 (JDB)** |
| **ALEX M. AZAR, in his official capacity as Secretary of Health and Human Services,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

Akron General Medical Center ("Akron General") is an acute care provider in Akron, Ohio, that challenges the decision of the Provider Reimbursement Review Board ("PRRB" or "Board") with respect to Medicare reimbursement claims. See Pl.'s Renewed Mot. for Summ. J. ("Pl.'s Mot.") [ECF No. 42]. Akron General and the Secretary of Health and Human Services (the "Secretary") each move for summary judgment, arguing that the Board's decision should be reversed and affirmed, respectively. See id.; Def.'s Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mot. ("Def.'s Mot.") [ECF No. 43]. For the reasons that follow, Akron General's motion for summary judgment is denied, and the Secretary's cross-motion is granted.

**BACKGROUND**

At the end of each fiscal year, healthcare providers seeking Medicare reimbursement file cost reports with entities called fiscal intermediaries, which analyze and audit these cost reports. Healthcare providers may also qualify for a Medicare Disproportionate Share ("DSH") adjustment, which is an additional reimbursement to account for the costs of serving a disproportionate share of low-income patients. See 42 C.F.R. § 412.106. The calculation of the DSH adjustment is based,

in part, on the provider's "disproportionate patient percentage," defined as the sum of two fractions: the "SSI fraction," which accounts for the number of patients also eligible for supplemental security income benefits, and the "Medicaid fraction," which accounts for the number of patients also eligible for Medicaid. See 42 U.S.C. § 1395ww(d)(5)(F)(vi). Fiscal intermediaries determine the final reimbursement amount owed to the provider, including any DSH adjustment, and report this information to the provider in a Notice of Program Reimbursement ("NPR"). A provider may appeal the determination in the NPR to the Board "whenever there is a final fiscal-intermediary determination, a certain amount-in-controversy is met, and the provider appeals in a set timeframe." Empire Health Found. v. Burwell, 209 F. Supp. 3d 261, 268 (D.D.C. 2016) (citing 42 C.F.R. §§ 405.1835(a), 405.1840(b)).

Akron General received an NPR from its fiscal intermediary for fiscal year 2001 in December 2004 and filed an appeal with the Board early in 2005 identifying four issues with the NPR. May 14, 2015, PRRB Decision Letter ("5/14/15 Decision") [ECF No. 49-1] at 1 (J.A. 3). The two disputes relevant here[1] are: (1) a dispute with regard to the calculation of Medicaid eligible patient days used in calculating the Medicaid fraction ("Medicaid Eligible Patient Days issue"); and (2) a dispute with regard to the calculation of the SSI fraction ("SSI fraction issue"). Id.; Def.'s Mot. at 8.

Akron General's appeal was held in abeyance for several years. During this period, new Board regulations set a time limit for adding issues to appeals. 42 C.F.R. § 405.1835(c)(3); 2008 PRRB Rules, pt. I, r. 11.1; id., Model Form C; see also PRRB Alert 3: Added Issue Deadlines (Oct. 3, 2008). For new cases going forward, providers were required to add issues within 60 days of the deadline for filing an appeal. 42 C.F.R. § 405.1835(e)(3); see also id. § 405.1835(a)(3). For

---

[1] Of these four identified issues, one was later transferred to a group appeal, and another was resolved by the parties. Def.'s Mot. at 12, 15; Pl.'s Mot. at 4.

appeals—like Akron General's—that were already pending before the Board when the regulation went into effect, providers had until October 20, 2008, to add any new issues. PRRB Alert 3: Added Issue Deadlines (Oct. 3, 2008). Akron General did not add any new issues before this deadline.

In January 2014, the Board sent Akron General and its fiscal intermediary a Notice of Hearing, which set a May 2014 due date for Akron General's final position paper. 5/14/15 Decision at 4 n.8 (J.A. 6). The Notice of Hearing warned Akron General that "[o]nly issues addressed in final position papers will be decided at the hearing." Id.; Final Notice of Hr'g [ECF No. 49-1] at 1 (J.A. 694).

Akron General submitted a timely final position paper, but the fiscal intermediary argued that the provider had omitted the Medicaid Eligible Patient Days issue and had substituted it with entirely different claims. 5/14/15 Decision at 1–2 (J.A. 2–3). The fiscal intermediary argued that the omitted Medicaid Eligible Patient Days issue therefore had been abandoned and that Akron General had "not properly appealed [the] additional issues, as they were not part of the appeal request . . . nor were they included in [Akron General's] preliminary position paper." 5/27/14 MAC's Jurisdictional Challenge [ECF No. 49-1] at 2 (J.A. 222). The fiscal intermediary requested that the Board "not claim jurisdiction for" the newly argued additional issues because they "were not properly appealed, added, or briefed and should not be considered as properly appealed before the Board." Id. at 3 (J.A. 223). Akron General countered that it had "appealed a very broad DSH/Medicaid Eligible Days issue seeking to include all eligible days," including the alleged sub-issues described in the final position paper. Provider Akron General's Resp. to MAC's Jurisdictional Challenge [ECF No. 49-1] at 13–14 (J.A. 69–70).

In a May 2015 decision, the Board concluded that the fiscal intermediary was correct; the Board found that Akron General had "failed to brief" the Medicaid Eligible Patient Days issue and had not properly and timely added the "additional sub-issues" (hereinafter "DSH sub-issues") and hence both issues were dismissed from the appeal. 5/14/15 Decision at 7–8 (J.A. 7–8). As for the SSI fraction issue, the Board determined in its May 2015 decision that the issue was properly briefed but that it was subject to CMS Ruling 1498-R—a CMS ruling that sought to correct a systematic SSI percentage error identified in a 2008 Medicare reimbursement district court case.[2] The Board's May 14, 2015, decision remanded the SSI fraction issue "under separate cover" to the fiscal intermediary to be recalculated pursuant to CMS Ruling 1498-R. 5/14/15 Decision at 5 (J.A. 7).

The Board's May 2015 decision was nonfinal because it did not resolve all of the issues Akron General raised in its original appeal. The May 2015 decision noted this fact and explained that judicial review would be available only "upon final disposition of the case." Id. at 6 (J.A. 8); Pl.'s Mot. at 6–7 (characterizing first decision as nonfinal and second decision as final); Def.'s Mot. at 14–15 (same). A few months later, a final issue was resolved, and the Board issued a final letter noting that Akron General's appeal had been closed and that "[r]eview of the jurisdictional determination"—i.e., the dismissal of the Medicaid Eligible Patient Days issue and DSH sub-issues—was then "available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §[]405.1875." Oct. 15, 2015, PRRB Withdrawal Letter ("10/15/15 Letter") [ECF No. 49-1] at 1 (J.A. 1). Akron General then filed the complaint in this case.

---

[2] In in Baystate Med. Ctr. v. Leavitt, 545 F. Supp. 2d 20 (D.D.C. 2008), as amended, 587 F. Supp. 2d 37 (D.D.C. 2008), this Court identified several issues with CMS's approach to calculating providers' SSI fractions and remanded to the agency for further action. 545 F. Supp. 2d at 57–58. In response, CMS issued CMS Ruling 1498-R, which "attempted to fix some of the issues raised [in Baystate]" and "provided that any pending reimbursement appeals related to the . . . issues [addressed in Baystate] would automatically be sent back to the fiscal intermediaries for recalculation." Empire, 209 F. Supp. 3d at 265.

Akron General seeks judicial review of the Board's decisions on the Medicaid Eligible Patient Days issue and DSH sub-issues, as well as on its decision to remand the SSI issue pursuant to CMS Ruling 1498-R.  See Am. Compl. [ECF No. 12].  Each side moves for summary judgment in its favor. [3]  The parties also have submitted position papers on whether the Supreme Court's decision in Azar v. Allina Health Services, 139 S. Ct. 1804 (2019), would affect the determination of this case.[4]  The Court has considered the parties' positions on these issues, and this case is now ripe for resolution.

**LEGAL STANDARD**

The Medicare statute serves as an exclusive source of federal court jurisdiction over Medicare provider reimbursement disputes.  Jordan Hosp. v. Leavitt, 571 F. Supp. 2d 108, 118 (D.D.C. 2008) (citing 42 U.S.C. §§ 405(h), 1395ii, 1395oo(f)).  Under the Medicare statute, a healthcare provider has "the right to obtain judicial review of any final decision of the Board" or "of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question."  42 U.S.C. § 1395oo(f)(1).

The Medicare statute directs that the Administrative Procedure Act ("APA") applies to judicial review of Board decisions.  42 U.S.C. § 1395oo(f)(1).  Agency action is unlawful under the APA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

---

[3] Akron General also moved for leave to file a surreply to the Secretary's reply in support of its cross-motion for summary judgment.  See Mot. for Leave to File Surreply [ECF No. 48].  Because the proposed surreply would not "be helpful to the resolution of the pending motion," Banner Health v. Sebelius, 905 F. Supp. 2d 174, 187 (D.D.C. 2012), Akron General's motion to file a surreply to the Secretary's reply is denied.

[4] Akron General also moved for leave to file a "surreply" to the Secretary's statement regarding the applicability of Allina.  See Mot. for Leave to File Surreply [ECF No. 54].  The Secretary opposes this motion, see Def.'s Opp'n to Pl.'s Mot. for Leave to File Surreply [ECF No. 56], and Akron General submitted a reply in support of its motion to file a surreply, see Pl.'s Reply in Supp. of Its Mot. for Leave to File Surreply [ECF No. 57].
  Whatever the impact of Allina on CMS Ruling 1498-R, the Court is persuaded that it is not an issue to be decided in this case.  Because the Court need not consider further briefing on any impact of Allina, Akron General's motion for leave to file a surreply to the Secretary's statement on Allina is denied.

law," "in excess of statutory . . . authority," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (C), (E).

## DISCUSSION

### I.  JURISDICTION

As a preliminary matter, this Court must determine whether the issues presented represent the "final decision of the Board" subject to judicial review under the Medicare statute. 42 U.S.C. § 1395oo(f)(1); see Empire Health, 209 F. Supp. 3d at 266 (discussing 42 U.S.C. §§ 405(h) and 1395ii).

Board remand orders are nonfinal decisions and are generally not subject to judicial review. 42 C.F.R. § 405.1877(c)(3); Empire Health, 209 F. Supp. 3d at 268; see also Jordan Hosp., 571 F. Supp. 2d at 114–115 (discussing parallel situation in which the remand order came from the Administrator rather than the Board).[5] A Board dismissal for failure to follow the Board's rules, however, is "final and subject to judicial review." 42 C.F.R. § 405.1877(a)(3) (judicial review) (cross-referencing 42 C.F.R. § 405.1875(a)(2)(ii) (administrator review), which cross-references 42 C.F.R. § 405.1868(d)(1) (dismissals in response to failure to follow Board rules)).

Akron General argues that all issues are subject to judicial review "because the October 15, 2015 decision was a final decision," or, alternatively, "because the Board's failure to issue a final decision was itself a final decision." Pl.'s Mot. at 8. The Secretary argues that the only final decision subject to judicial review is "the PRRB's decision that it lacked jurisdiction over certain Medicare reimbursement issues," not "the decision to remand the calculation of the SSI fraction." Def.'s Mot. at 17–18.

---

[5] An exception to the normal judicial review standard occurs when the Board has granted expedited judicial review.  See 42 C.F.R. §405.1842(f)(1).

The Court concludes that the Board's decision to remand the SSI issue pursuant to CMS Ruling 1498-R is a Board remand order that is a nonfinal decision and therefore not subject to judicial review under the Medicare statute. See Palisades Gen. Hosp., Inc. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005); Empire Health, 209 F. Supp. 3d at 269 (discussing PRRB remand order pursuant to CMS Ruling 1498-R and holding that "[s]uch a mere remand order . . . is not fit for judicial review" under the Medicare statute and its corresponding regulations) (citing 42 C.F.R. § 405.1877(c)(3)); Emanuel Med. Ctr., Inc. v. Sebelius, 37 F. Supp. 3d 348 (D.D.C. 2014).[6] Hence, as to this issue, the Court grants the Secretary's motion for summary judgment. Because the Board specified that this SSI issue was to be "remanded under separate cover," 5/14/15 Decision at 5 (J.A. 7), the Court considers this issue to be severed from the other issues in Akron General's appeal, and the nonfinal nature of the SSI issue does not affect the finality of other issues resolved by the Board.

As for the Board's dismissal of the Medicaid Eligible Patient Days issue and the DSH sub-issues, the Court concludes that each of these decisions constituted a Board dismissal for failure to follow its rules, which is subject to judicial review when final. 42 C.F.R. §§ 405.1868(d)(1), 405.1875(a)(2)(ii), 405.1877(a)(3)(i). These decisions became final following the Board's October 15, 2015, letter, which confirmed that all issues had been decided, that the Board had closed Akron General's appeal, and that judicial review was available under 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1875. 10/15/15 Letter at 1 (J.A. 1). The Court therefore has jurisdiction to

---

[6] Akron General suggests that it would be precluded from seeking any judicial review of the SSI issue if the Court declines to halt the Board's remand pursuant to CMS Ruling 1498-R because, Akron General contends, the issue after remand would be subject to "reopening regulations" rather than normal appeal processes. Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. & Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply") [ECF No. 46] at 11–20. The Secretary responds that Akron General is mistaken and that standard review procedures will apply. Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") [ECF No. 47] at 2. The Court has no reason to doubt the Secretary's representations about post-remand proceedings under its own regulations, and Akron General has not persuaded the Court that it's interpretation of the CMS Ruling is correct. The Court therefore concludes that Akron General's concerns about being precluded from all judicial review are without merit.

review the Board's final decision dismissing DSH sub-issues on timeliness grounds and the Medicaid Eligible Patient Days issue on abandonment grounds.

## II.    THE BOARD'S DISMISSAL OF DSH SUB-ISSUES ON TIMELINESS GROUNDS

The Board dismissed Akron General's DSH sub-issues from its appeal because they were "not properly added to the appeal" pursuant to the Board's deadlines and procedures. 5/14/15 Decision at 6 (J.A. 8). Akron General acknowledges that "the Secretary may . . . adopt appropriate claims processing rules governing PRRB proceedings." Pl.'s Mot. at 11. However, Akron General argues that the Board's dismissal of the DSH sub-issues was improper because the Board treated the October 20, 2008, deadline to add new issues to Akron General's appeal "as a jurisdictional rule, as opposed to a claims processing rule." Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. & Reply in Supp. of Pl.'s Mot. ("Pl.'s Opp'n") [ECF No. 45] at 6. Akron General argues that the October 20, 2008, deadline is, in fact, "not jurisdictional" because the Secretary did not have authority to limit its own jurisdiction, and hence "the Secretary acted in an ultra vires manner by issuing regulations limiting the Board's jurisdiction only to . . . claims added [to the appeal] by the October 20, 2008 deadline." Pl.'s Mot. at 10–11, 13 (emphasis added).

The May 2015 decision uses the term "jurisdictional" loosely and imprecisely. It introduces the May 2015 decision by calling it a "decision regarding jurisdiction," after reviewing "jurisdictional briefs." 5/14/15 Decision at 1 (J.A. 3). The Board's October 2015 withdrawal letter further summarized the holding of the May 2015 decision as a "jurisdictional determination" deciding that "it did not have jurisdiction." 10/15/15 Letter at 1 (J.A. 1). However, the substance of the May 2015 decision makes clear that it is not a "jurisdictional" decision in the way that Akron General proposes. As another district court recently noted—in the context of a similar review of Board determinations requiring the court to untangle the meaning of the word "jurisdiction"—

8

"[r]eferences to 'jurisdiction' are unfortunately often thrown around in a hapless manner" and an "oblique reference to 'jurisdiction'" can be "intentional or simply the result of sloppy drafting." Empire Health, 209 F. Supp. 3d at 268.

Here, the best reading of the Board's use of the word "jurisdictional" in reference to its decision dismissing the late-added DSH sub-issues is as a kind of shorthand meaning "disposing of an issue short of deciding its merits." The Board's May 2015 decision does not use the term "jurisdiction" in its section describing dismissal of the DSH sub-issues. Instead, it clearly states that it dismissed the DSH sub-issues pursuant to its regulatory authority under 42 C.F.R. § 405.1835(c)(3), which it described as "limit[ing] the addition of issues to appeals," not curtailing the Board's jurisdiction. 5/14/15 Decision at 5 (J.A. 7). The Board went on to explain that it dismissed the sub-issues because they were untimely added: there was "no evidence" of these sub-issues "being contemplated within the initial issue statement," and there was "nothing in the record that requested to add these three issues or to expand the original Medicaid eligible days issue to include additional sub-issues prior to the October 20, 2008 deadline." Id. at 6 (J.A. 8). Rather, the DSH sub-issues "were first addressed in the record in the Provider's final position paper," and, accordingly, the Board "f[ound] these issues were not properly added to the appeal." Id. Hence, it "dismisse[d] them from the appeal." Id.

The Court agrees with Akron General only to a limited degree—the October 20, 2008, deadline was indeed a "claims processing rule," not a jurisdictional bar. See Pl.'s Opp'n at 6. However, because the Board dismissed the challenged DSH sub-issues pursuant to such a claims processing rule, the Court concludes that Akron General is not entitled to relief. The Board acted within its authority when it dismissed these sub-issues for Akron General's failure to follow Board rules and procedures. The Medicare Act imbues the Board with "full power and authority to make

rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this section." 42 U.S.C. §1395oo(e). Regulations further provide that "[i]f a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order," the Board is empowered to "[d]ismiss the appeal with prejudice." 42 C.F.R. § 405.1868(b). Dismissing a claim or an appeal for failure to meet a timing deadline is not inconsistent with the text or purpose of the Medicare Act and appears necessary for the Board to be able to carry out its review function.

Here, the Board set a clear filing deadline of October 20, 2008, for additional issues to be added to pending appeals, Akron General failed to meet that deadline, and the Board dismissed the untimely added DSH sub-issues from the case pursuant to its rules and regulations. Akron General does not argue that it lacked notice of this deadline. There is no indication that the Board declined to exercise jurisdiction over these issues—only that it dismissed them—and Akron General has provided no basis from which the Court could conclude that the Secretary or Board acted arbitrarily or capriciously, or in excess of statutory authority, by applying Board claims-processing rules faithfully to Akron General's appeal. The Court grants the Secretary's cross-motion for summary judgment on this issue and affirms the Board's dismissal of the untimely added DSH sub-issues.

### III. THE BOARD'S DISMISSAL OF THE MEDICAID ELIGIBLE PATIENT DAYS ISSUE DUE TO ABANDONMENT

Rule 27 of the 2013 Board Rules—in effect at the time that the parties filed their final position papers before the Board—established deadlines, formatting requirements, and content requirements for final position papers submitted to the Board for review. 2013 PRRB Rules, pt. II, r. 27. In its May 2015 decision, the Board examined Akron General's final position paper and concluded that Akron General had "failed to brief the specific issue of Medicaid Eligible Patient

Days in its paper," and that "[s]ince the Medicaid Eligible Patient Days issue was not addressed as required by Board Rule 27, . . . that this issue ha[d] been abandoned." 5/14/15 Decision at 5 (J.A. 7). Accordingly, the Board "dismisse[d] it from the case." Id. Akron General provides two arguments, offered in the alternative, why the Board's dismissal of the Medicaid Eligible Patient Days issue was improper. The Court will consider each in turn.

First, Akron General contends that "[i]t is clear that the specific argument the Board found was abandoned was whether the Board had jurisdiction to decide the Medicaid eligible days issue"— i.e., not the substance of the Medicaid Eligible Patient Days issue itself—based on Akron General's reading of the introductory section of the May 2015 decision, which described the decision's contents as "set[ting] forth" a "decision regarding jurisdiction." Pl.'s Mot. at 13 (quoting 5/14/15 Decision at 1 (J.A. 3)). Akron General argues that this decision was arbitrary and capricious and not supported by substantial evidence. Pl.'s Mot. at 16. The Secretary disagrees, reiterating that Akron General failed properly to raise and brief the merits of the issue and that accordingly the issue was deemed abandoned and dismissed. Def.'s Mot. at 21–23.

As a preliminary matter, the Court concludes that the May 2015 decision was not "jurisdictional" in the sense that Akron General proposes. As explained above, the Court concludes that the Board's use of the term "jurisdictional" to describe its decision was simply an imprecise way of describing a non-merits dismissal of issues on procedural grounds.

Further, the text of the May 2015 decision directly contradicts Akron General's proposed interpretation. After explaining its dismissal of the Medicaid Eligible Patient Days issue on abandonment grounds, the Board went on to explain:

> Although the Provider had previously argued as to why the Board should find jurisdiction over the Medicaid Eligible Patient Days issue, the Board need not address these arguments due to the abandonment of the issue.

5/14/15 Decision at 5 (J.A. 7). Akron General argues that "abandonment of the issue" refers to the jurisdictional arguments described earlier in the sentence, not the substance of the Medicaid Eligible Patient Days issue, and that therefore the only "issue" deemed abandoned was whether the Board had jurisdiction to consider the Medicaid Eligible Patient Days issue. The Board's decision certainly lacks a measure of precision, but the best reading of "these arguments" and "the issue" in the final clause of the sentence quoted above is as "these arguments [about jurisdiction]" and "the [Medicaid Eligible Patient Days] issue." This reading is preferable because it tracks the identification earlier in the sentence of what has been "argued"—jurisdiction—as well as the use of the word "issue" in the phrase "Medicaid Eligible Patient Days issue." Hence, the Court understands "these arguments" to mean jurisdictional arguments (that were not addressed), and its statement regarding "abandonment of the issue" to refer to abandonment of the substance of the Medicaid Eligible Patient Days issue, not any jurisdictional "issue." In sum, then, the text of the Board's decision makes clear that it was not dismissing the Medicaid Eligible Patient Days issue on jurisdictional grounds—indeed, it was not addressing the jurisdictional arguments at all because Akron General had abandoned the Medicaid Eligible Patient Days issue altogether by failing to include that issue in its final position paper.

Because the Board did not dismiss Akron General's jurisdictional arguments about the Medicaid Eligible Patient Days issue, but rather dismissed the issue substantively based on Akron General's failure to brief the issue, the Court concludes that Akron General's arguments here about the alleged jurisdictional dismissal are without merit.

In the alternative, Akron General argues that, "assuming the Board found that the merits issue was abandoned," "the PRRB's rules do not require the Board to dismiss an issue that was not briefed" and that the Board abused its discretion in dismissing the issue without either seeking

"additional briefing in connection with issues that it believed were not adequately presented" or explaining its choice to apply "the harsh sanction of dismissal." Pl.'s Reply at 4–5 (emphasis added). Further, Akron General notes that it at least addressed the <u>jurisdiction</u> of the Board to decide the Medicaid Eligible Patient Days issue in its filings, and thus the dismissal of the issue is unsupported by substantial evidence. <u>Id.</u> at 3. The Secretary disagrees, arguing that Akron General's "only reference to the Medicaid Eligible Days issue in the Final Position Paper appears in the jurisdictional overview, which provides a cursory description of the earlier jurisdictional dispute" but no discussion of the merits of the issue. Def.'s Mot. at 22. The Secretary explains that "noting something as a jurisdictional issue is different from properly raising and briefing the merits of the issue in accordance with the Board's rules," and that dismissal of this undeveloped issue "was in accordance with the regulations and rules, and was not arbitrary, capricious, or an abuse of discretion." <u>Id.</u> at 22–23.

Recall that the Medicare Act grants the Board "full power and authority to make rules and establish procedures, not inconsistent with the provisions of this subchapter or regulations of the Secretary, which are necessary or appropriate to carry out the provisions of this section." 42 U.S.C. §1395oo(e). Regulations provide that "[i]f a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order," the Board is empowered to "[d]ismiss the appeal with prejudice . . . or . . . [t]ake any other remedial action it considers appropriate." 42 C.F.R. § 405.1868(b). The Board Rules, which have been amended several times over the duration of Akron General's years-long appeal before the Board, have consistently required providers to identify key issues at least three times during the life of an appeal: in a hearing request, in a preliminary position paper, and in a final position paper. The Rules in effect when Akron General filed its hearing request required that issues be identified with a degree of particularity. <u>See</u> 2002

PRRB Instructions, pt. I, B.II.a. The Rules then required two rounds of position papers—preliminary and final—articulating all facts and arguments, along with relevant evidence, that supported each side's position with respect to the dispute. See id., pt. II, B. More specifically, the Rules in effect at the time that Akron General filed its final position paper specifically stated that final position papers "should" include "at a minimum" identification of each issue and its reimbursement impact, the procedural history of the dispute, a statement of facts noting disputed and undisputed facts, and a statement of argument and authorities with a thorough explanation of how the party contends the authorities apply to the facts. 2013 PRRB Rules, pt. II, r. 27.2. The same Rules provided that the Board had authority to dismiss "an issue on its own motion . . . if it has a reasonable basis to believe that the issues have been . . . abandoned." Id. pt. IV, r. 41.2.

Here, Akron General does not directly contest the fact that it failed to brief the substance of the Medicaid Eligible Patient Days issue in its final position paper. See Pl.'s Mot. at 13–17. Instead, it argues that (1) it should not have been deemed to have abandoned the issue because it argued about the Board's jurisdiction to consider the issue before the final position paper was submitted, in the final position paper, and in subsequent filings; (2) the Board Rules state that "the provider 'should' address each issue in its final position paper" but not that this is strictly required; and (3) the Board "cannot plausibly have satisfied [the requirement to articulate a satisfactory explanation for its action] when it considered only one of the four briefs filed by Plaintiff in reaching its conclusion that the Medicaid eligible days issue had been abandoned." Id. at 16–17.

The Court concludes that each of these arguments is without merit. There is, in fact, a distinction between arguing about jurisdiction to decide an issue and the substance of the issue itself, and the Board Rules clearly stated that final position papers were to include the substance of a party's argument with respect to each issue submitted for the Board's consideration. This

requirement makes sense because the Board needs to know which issues the provider still wishes the Board to decide, particularly in a case such as this in which the appeal had been pending for a decade. The Board's explanation for its action with respect to Akron General's appeal is straightforward and direct—because the final position paper was to contain briefing on all live issues, and no substantive discussion of the Medicaid Eligible Patient Days issue appeared in that final position paper, the Board therefore concluded that the issue had been abandoned. A review of Akron General's final position paper confirms that the Medicaid Eligible Patient Days Issue is not among the three issues previewed in the section titled "Issues to Be Presented and Amount in Controversy" and set out in more detail in the "Argument" section. See Provider's Final Position Paper [ECF No. 49-1] at 1, 4–29 (J.A. 341, 344–69). Akron General provides some facts that would have weighed against a finding of abandonment—most notably, its ongoing arguments about the Board's jurisdiction to consider the issue—but the Board still had enough information to form a reasonable belief that this issue had been abandoned. In light of this "reasonable basis to believe" that this issue had been abandoned, the Board reasonably dismissed the issue from the appeal as provided in its claims-processing rules. See 2013 PRRB Rules, pt. IV, r. 41.2. Hence, the Court finds that the Board's dismissal of the Eligible Patient Days issue due to a finding of abandonment was not arbitrary or capricious and was based on substantial evidence, and hence the Secretary's motion for summary judgment is granted as to this issue.

## CONCLUSION

For the foregoing reasons, Akron General's motion for summary judgment is denied, and the Secretary's cross-motion for summary judgment is granted. The Court finds no jurisdiction to review the Board's order remanding the SSI issue under separate cover pursuant to CMS Ruling 1498-R. The Court affirms the Board's dismissal of the DSH sub-issues on timeliness grounds

and its dismissal of the Eligible Patient Days issue on abandonment grounds.  A separate order

will issue on this date.

_____
/s/
JOHN D. BATES
United States District Judge

Dated: <u>September 30, 2019</u>